UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11730-RGS

JOHN DOE AND ROBERT ROE

v.

THE PIKE SCHOOL, INC., et al.

MEMORANDUM AND ORDER ON
DEFENDANT JOHN DOE'S MOTION
TO DISMISS COUNTS 11 AND 12 OF THE AMENDED COMPLAINT

February 4, 2014

STEARNS, D.J.

Plaintiffs John Doe and Robert Roe[1] brought this lawsuit against The Pike School (Pike), The Groton School (Groton), and certain school employees, seeking damages for sexual abuse perpetrated by a female teacher at Pike, abuse that in John Doe's case continued into his high school year at Groton. Plaintiffs assert claims for negligence against all defendants, as well as claims under 20 U.S.C. §§ 1681-1688 (Title IX) and Mass. Gen. Laws ch. 93, § 102 (the Massachusetts Equal Rights Act) against Pike and Groton. Groton now moves to dismiss John Doe's Title IX and Massachusetts Equal Rights Act claims. A hearing on the motion was held on January 31, 2014. Leave was granted to

---

[1] For evident reasons, plaintiffs filed suit under pseudonyms. Their true identities are known to all of the relevant parties.

Doe to file a supplemental pleading, which he did on February 3, 2014.

## BACKGROUND

Plaintiffs, now mature adults, accuse Judith Elefante, a former Pike School teacher, of inappropriate sexual behavior while they were middle school pupils at Pike. John Doe, who is the subject of the instant motion, attended Pike from the seventh to ninth grade (1990 through 1993).[2] As alleged in the Complaint, Elefante groomed him for a sexual relationship, which came to fruition when he was fifteen. Months after the abuse began, John graduated from Pike and entered tenth grade at Groton, where he was awarded a full academic scholarship. The sexual relationship with Elefante continued during John's first year at Groton. His grades suffered as a result, forcing him to leave Groton at the end of the school year. John Doe alleges that Groton failed to prevent Elefante from pursuing sexual contact with him while he attended Groton, motivated by the fact that he is a male, thereby denying him the protections of Title IX and the Massachusetts Equal Rights Act.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient

---

[2] Robert Roe attended Pike during his seventh and eighth grade years a decade earlier (1979 to 1981). Roe did not attend Groton and does not assert a cause of action against the school.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

DISCUSSION

**Title IX**

Title IX provides, in pertinent part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).[3] The Supreme Court has

---

[3] Title IX applies only to schools that are recipients of federal funding. 20 U.S.C. § 1681(a). Groton stipulates for the purposes of the instant motion

3

interpreted the statute to provide a private right of action for the recovery of pecuniary damages. *See Franklin v. Gwinnet Cnty. Pub. Schs.*, 503 U.S. 60, 76 (1992); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979). Aggravated sexual harassment is a form of sex discrimination and is actionable under Title IX, whether in the form of quid pro quo harassment or hostile environment harassment. *Wills v. Brown Univ.*, 184 F.3d 20, 25 (1st Cir. 1999).

Hostile environment harassment, which is what is alleged here, "requires acts of sexual harassment that are so severe and pervasive as to interfere with the educational opportunities normally available to students."[4] *Santiago v. Puerto Rico*, 655 F.3d 61, 73 (1st Cir. 2011). To prevail on a hostile environment claim, a plaintiff must "identify a cognizable basis for institutional liability." *Id.* (internal quotations and citation omitted). "This necessitates a showing that a federal funding recipient acted with deliberate indifference towards known acts of harassment occurring in its programs or activities." *Id.* The deliberate indifference standard imposes liability on a federal funding

---

that it is within the ambit of the statute. Def.'s Mot. at 3, n.2.

[4] Quid pro quo harassment "occurs most often when some benefit or adverse action, such as change in salary at work or a grade in school, is made to depend on providing sexual favors to someone in authority." *Wills*, 184 F.3d at 25.

recipient only where "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has *actual knowledge* of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 290 (1989) (emphasis added). "A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644 (1999).

Groton argues that Doe fails to state a Title IX claim because it did not have the power to take disciplinary action against Elefante. Groton relies on *Santiago*, a case in which the First Circuit held that a school district did not have the authority to take corrective action against a school bus driver employed by a private company that transported students under a contract with Puerto Rico's Department of Education. 655 F.3d at 74. The sexual misconduct in *Santiago*, however, occurred away from school property and the school principal did not have the authority to take action against the contractor on behalf of the Department. In Doe's case, the operative facts are significantly different. Doe alleges that he was abused by Elefante while on Groton's campus during the school year and immediately after away football games when Elefante was permitted to drive him back to the campus despite school

rules that required he remain with the Groton team.

It is beyond dispute that Groton possessed the authority to ban third-party trespasses on its campus and stood *in parens patriae* to students traveling to and from away football games. Because the "sexual abuse occurred at the school during school hours" and while plaintiff was in the school's custody, Groton's "control over the environment in which the harassment occurred is sufficient to confer the authority to remedy the harassment." *Doe v. Defendant A*, 2012 WL 6694070, at *5 (N.D. Okla. Dec. 21, 2012) ("School District could have exercised its inherent authority over its property to prohibit [non-employee defendant] from coming on school property and abusing [plaintiff] . . . ."); *see also Drews v. Joint Sch. Dist. No. 393*, 2006 WL 851118, at *8 (D. Idaho Mar. 29, 2006) ("Non-students accessing the schools or attending sporting events would be within the control of the school district as long as such sporting event was taking place at [defendant high school] or [defendant high school] students were competing at another school."). *Cf. Davis*, 526 U.S. at 646 ("Where, as here, the [student-on-student] misconduct occurs during school hours and on school grounds . . . the misconduct is taking place 'under' an 'operation' of the funding recipient. In these circumstances, the recipient retains substantial control over the context in which the harassment occurs." (internal citation omitted)). *Compare J.P. v. Millard Pub.*

*Schs.*, 830 N.W.2d 453, 464 (Neb. 2013) (school's authority over a pupil and his property expires once the pupil leaves school grounds or a school-sponsored off-campus event).

The mere allegation that *some* official at Groton had the power to deny Elefante access to the Groton campus (and John Doe while he was resident), however, is not enough to state a proper Title IX claim. "The missing ingredient is whether an appropriate person had actual knowledge of the suspected harassment, not whether the funding recipient had control, in a general sense, of the service provided and the environment in which the harassment occurred." *Santiago*, 655 F.3d at 75. Doe alleges that the Groton headmaster, the dean of students, dorm supervisors, and football coaches all knew Elefante (at least by sight) because of her employment at nearby Pike and her administrative interactions with officials at Groton.[5] The only facts in the Complaint attempting to show "actual knowledge" of the harassment, however, are Doe's allegations that his dormitory proctors and football coaches knew that he was breaking school rules by hosting a non-family member in his dorm room, leaving campus without authorization, and being driven back to campus

---

[5] Plaintiffs' counsel represented at oral argument that Pike is a feeder school for Groton.

by Elefante after football games.[6]

The elements of a Title IX hostile environment harassment claim, however, are more stringent: a properly-plead Title IX defendant must be plausibly shown to have had *actual* knowledge of the alleged harassment. *See id.* at 74 (plaintiff must allege facts giving rise to an inference of actual, not constructive, knowledge by a school official authorized to take remedial action). In *Davis*, the Supreme Court specifically rejected a "negligence" standard for Title IX claims that would hold schools liable for failing to respond to harassment of which school officials "*should have* known." *Davis*, 526 U.S. at 642 (emphasis in original), citing *Gebser*, 524 U.S. at 283.

In his supplemental pleading, Doe relies on dicta in *Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387 (E.D.N.Y. 2005), and like cases in urging a more expansive view of the actual knowledge requirement than the one propounded by the Supreme Court in *Davis*. *See id.* at 397 ("Most federal courts appear to agree that the 'actual knowledge' need only be of facts indicating that the teacher has *the potential* to abuse a student." (emphasis in original)). However, in *Tesoriero* and Doe's other cited cases where a federal

---

[6] Although Doe alleges that a roommate at Groton once interrupted him in the midst of sexual relations with Elefante, there is no allegation that the roommate informed Groton officials of the illicit encounter.

court found the existence of actual knowledge to be a trial-worthy issue, a school official at an appropriate level of authority had received a complaint of a student-teacher sexual liason or a report of a teacher's inappropriate sexual conduct. *See, e.g., Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 64 (D. Me. 1999) (principal received complaint that teacher was having a sexual relationship with a student); *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 708-709 (E.D. Pa. 2007) (same); *Gordon ex rel. Gordon v. Ottumwa Cmty. Sch. Dist.*, 115 F. Supp. 2d 1077, 1082 (S. D. Iowa 2000) (principal received report that teacher's aide hugged, kissed, and patted the buttocks of student); *Zamora v. N. Salem Cent. Sch. Dist.*, 414 F. Supp. 2d 418, 422 (S.D.N.Y. 2006) (principal and superintendent received multiple reports that teacher had previously groped students); *Tesoriero*, 382 F. Supp. 2d at 398 (principal received credible report that another teacher at the school had observed a student and teacher interacting in a manner suggesting romantic involvement and had seen an inappropriate letter from the offending teacher to the student).

In his Complaint, Doe does not allege that any Groton official was told of his sexual relationship with Elefante or that the coaches or dorm heads had witnessed or received reports of harassing conduct by Elefante. The allegations in the Complaint, however generously read, amount to no more than a claim

that Groton officials *should* have uncovered the sexual relationship between Doe and Elefante because of Doe's violations of school rules. This states no more than the theory of negligence liability that the Supreme Court rejected in *Davis*. Doe's Title IX claim against Groton will thus be dismissed.

**Massachusetts Equal Rights Act**

The Massachusetts Equal Rights Act (MERA) provides a private right of action for individuals within the Commonwealth who believe that they have been discriminated against on the basis of "sex, race, color, creed or national origin." Mass. Gen. Laws ch. 93, § 102(a). "Only discrimination that is both purposeful and based on sex comes within the reach of the statute; if any element is missing, a claim under the statute fails." *Currier v. Nat'l Bd. of Med. Exam'rs*, 462 Mass. 1, 14-15 (2012) (alterations omitted), quoting *LaCava v. Lucander*, 58 Mass. App. Ct. 527, 535-536 (2003).

Plaintiff alleges that Groton failed to protect him from Elefante's harassment and failed to comply with the mandatory state child abuse reporting law because of his gender. *See* Mass. Gen. Laws ch. 119, § 51A (requiring specified persons to report suspected child abuse to the Massachusetts Department of Children and Families). Because he has not pled facts sufficient to permit a reasonable inference that any employee of Groton knew of his sexual relationship with Elefante, plaintiff cannot *ipso facto* demonstrate that Groton

*purposefully* discriminated against him. *See Currier*, 462 Mass. at 16 (plaintiff must plead facts "sufficient to permit an inference of intentional discrimination"). Accordingly, Doe's MERA claim against Groton will also be dismissed.

ORDER

For the foregoing reasons, Groton's motion to dismiss John Doe's claims under Title IX and Mass. Gen. Laws ch. 93, § 102, is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE